UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DEXTER ISAAC,

                          Petitioner,                                  02 CV 4279 (SJ)

   -against-

                                                                            **MEMORANDUM**
UNITED STATES OF AMERICA,                            **AND ORDER**

                                Respondent.
------------------------------------------------------------X

A P P E A R A N C E S:

MATTHEW M. ROBINSON, ESQ.
11331 Grooms Road, Suite 3000
Cincinnati, OH 45242
Attorney for Petitioner

ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
One Pierrepont Plaza
Brooklyn, NY 11201
Attorney for Respondent

JOHNSON, Senior District Judge:

    Petitioner Dexter Isaac ("Petitioner") brings this motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"), requesting that the Court vacate, set aside, or correct the conviction and sentence imposed under criminal docket number 98 CR 0497. For the reasons stated herein, the Motion is DENIED.

1

## BACKGROUND

Petitioner was originally indicted on May 8, 1998, for conspiracy to obstruct, delay, and affect interstate commerce, in violation of 18 U.S.C. § 1951, and for the use and carrying of a firearm during and in relation to the robbery of Waleed R. Hammouda, a licensed taxi-cab driver, in violation of 18 U.S.C. § 924. On June 26, 1998, a superseding indictment changed and expanded the charges against Petitioner to include: murder for hire and conspiracy to commit murder for hire, in violation of 18 U.S.C. § 1958 (Counts One and Two of the indictment); intentionally committing and threatening physical violence to a person in furtherance of a plan to obstruct and affect commerce ("Hobbs Act robbery") and robbery conspiracy, in violation of 18 U.S.C. § 1951 (Counts Three and Four); using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count Five); using intimidation or force against a witness, corrupting another to destroy evidence, and using intimidation or threats to influence the testimony of a witness at trial, all in violation of 18 U.S.C. § 1512 (Counts Six, Seven, and Eight); and credit card fraud in violation of 15 U.S.C. § 1644 (a) (Count Nine). On April 11, 2000,[1] a jury found Petitioner guilty of Counts One through Seven. The Court imposed terms of imprisonment on Counts One, Two, Three, Four, Six, and Seven to run concurrently to each other and consecutively to the term

---

[1] The judgment was amended on June 6, 2000 to correct typographical errors in the April 11, 2000 judgment.

2

imposed on Count Five for a total term of life plus 60 months.[2] Petitioner was also sentenced to a total of five years supervised release and a $700 special assessment.

Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Second Circuit (the "Second Circuit"), claiming that this Court erred in admitting unnecessary and prejudicial evidence, in contravention of Rule 404(b) of the Federal Rules of Evidence; the evidence presented at trial was insufficient to establish the effect on interstate commerce required to support his Hobbs Act and 18 U.S.C. § 924(c) convictions; and the government had failed to establish beyond a reasonable doubt that Petitioner had conspired to and did in fact commit murder and that Petitioner had engaged in witness intimidation and obstruction of justice. (Br. for Def.-Appellant Dexter Issac, at 35-53, 2d Cir. Docket No. 00-1273(L).) Petitioner further challenged this Court's jurisdiction on the ground that his actions had an insufficient effect on interstate commerce to support a conviction under 18 U.S.C. § 1958, and claimed that this Court allowed Petitioner to be convicted of a crime for which he had not been indicted. (Pro Se Supp. Br. on Behalf of Def.-Appellant Dexter Issac, at 2-10, 2d Cir. Docket No. 00-1273(L).) On July 11, 2001, the Second Circuit rejected these claims in a summary order. United States v. Issac, 14 F. App'x 81 (2d Cir. 2001). Petitioner did not seek certiorari with the United States Supreme Court.

---

[2] Count by count, Petitioner's sentence was as follows: life imprisonment and three years supervised release on Count One, life imprisonment and five years supervised release on Count Two, 240 months and three years supervised release on Counts Three and Four, 60 months and three years supervised release on Count Five, and 120 months and three years supervised release on Counts Six and Seven.

3

On July 30, 2002, Petitioner filed this motion alleging ineffective assistance of counsel by John S. Wallenstein, Esq. ("Counsel"), who represented Petitioner at trial and on appeal. Petitioner alleges that Counsel (1) failed to call an exculpatory witness, (2) failed to request known 18 U.S.C. § 3500 material, and (3) prevented Petitioner from testifying at trial on his own behalf. (Pet. § 2255 Mot. at 8-18.) Petitioner also alleges that Counsel provided ineffective assistance on appeal by failing to raise the issue of his own ineffectiveness at trial. (Pet. § 2255 Mot. at 8-18.)

## DISCUSSION

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining ineffective assistance of counsel. First, "the defendant must prove that counsel's representation fell beyond an objective standard of reasonableness...under prevailing professional norms." <u>Id</u>. at 688. When evaluating counsel's performance, a court must examine the circumstances of counsel's conduct from counsel's perspective at the time rather than from hindsight. <u>Id.</u> at 689. Moreover, in order to satisfy this first prong of <u>Strickland</u>, Petitioner must overcome the strong presumption that the challenged act or omission may be considered reasonable trial strategy. <u>Id</u>. at 689. Second, Petitioner must prove that Counsel's performance prejudiced his defense. This requires Petitioner to demonstrate that there is a reasonable probability that, but for Counsel's errors, the outcome of the proceeding would have been

4

different. Id. at 694. Courts deciding ineffective assistance claims need not "approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing of one." Id. at 697.

I.  **Counsel's Failure to Call an Exculpatory Witness**

Petitioner's first claim asserts that Counsel provided ineffective assistance by failing to call Hector Araujo, a witness who Petitioner alleges would have contradicted the testimony provided by the government's principle cooperating witnesses, David Alexander. Petitioner argues that by failing to call Araujo, Counsel missed the opportunity to undermine Alexander's testimony, which "was perhaps **the** key to a successful outcome." Pet. § 2255 Mot. at 11.

Counsel's failure to call Araujo (or any witness for that matter), however, does not constitute ineffective assistance of counsel. As this Court has previously held, "[t]he decision of whether to call or bypass a particular witness is a question of trial strategy which courts will practically never second-guess." Ozuru v. United States, 95 CV 2241, 1997 WL 124212, at *4 (E.D.N.Y. Mar. 11, 1997); see also Skinner v. Duncan, Nos. 02CV3430, 03MISC0066, 2003 WL 21386032, at *40 (S.D.N.Y. Jun. 17, 2003). Although Petitioner asserts that the record strongly suggests that there was no justifiable strategy in failing to call Araujo, Pet. § 2255 Mot. at 11, a close examination of the trial transcript suggests that the decision of whether or not to call Araujo was not so

5

unproblematic.[3] Instead, Araujo's testimony "may have as likely exposed inconsistencies and weaknesses in defendant's case as have lent support to Petitioner's defense." Ozuru, 1997 WL 124212, at *4. Counsel's decision not to call Araujo is therefore not found to be unreasonable. Having found that Petitioner has failed to establish the unreasonableness prong of the Strickland analysis, this Court finds it unnecessary to address the question of prejudice. Therefore, consistent with the Second Circuit's position on claims of ineffective assistance of counsel that are based on trial counsel's alleged strategic errors regarding the calling of witnesses, Petitioner's claim on this ground is rejected. See Id., 1997 WL 124212 at *4; United States v. Vargas, 920 F.2d 167, 169-170 (2d Cir. 1990); Trapnell v. United States, 725 F.2d 149, 155 (2d Cir. 1983).

II. Counsel's Failure to Request 18 U.S.C. § 3500 Material

Pursuant to 18 U.S.C. § 3500 ("Jencks Act"), the government is obligated to deliver to a defendant any statements made by witnesses in its possession that relate to the witnesses' testimony at trial. 18 U.S.C. § 3500(b). However, such obligation is only triggered upon a defendant's timely and sufficient motion. 18 U.S.C. § 3500(b); see also United States v. Scotti, 47 F.3d 1237, 1250 (2d Cir. 1995).

---

[3]Various exchanges between the prosecution, Counsel, the attorney for Petitioner's co-defendant, and Gregory Boyle, a detective in the New York City Police Department who testified at trial, show that Araujo may not have been a credible witness. See Trial Tr. at 1573-1576.

6

Petitioner claims that Counsel was ineffective because he failed to file a timely motion to obtain copies of the government's taped conversations with witness David Alexander, made when Alexander was first arrested. In essence, Petitioner is claiming that, because counsel did not obtain the tape in a timely manner, Petitioner's case during trial was prejudiced. Petitioner's claim that counsel did not have a copy of the tape during trial, though, is belied by both the government's response to the instant motion and the trial record, both of which make clear that Petitioner's attorneys were, in fact, in timely possession of a copy of the tape in question. In its memoranda of law in opposition to Petitioner's § 2255 Motion, the government explicitly states that a copy of the tape recording was provided to Counsel in a timely manner, Gov. Mem. Law Opp'n § 2255 Mot. at 3, and provides in support of that statement a copy of the government's 3500 exhibit list, which was provided to defense counsel prior to trial. This list states that an exhibit numbered Exhibit No. 3500-DA-5 is an audio cassette.[4] Gov. Mem. Law Opp'n § 2255 Mot., Ex. A. A review of the trial transcript also shows that the trial attorney for Petitioner's co-defendant, Robert Koppelman, Esq. ("Koppelman"), questioned Alexander extensively on his arrest, asking specifically about the content of Alexander's conversation with the arresting agents at the time. Trial Tr. at 647-652, 676-

---

[4] Since only one taped conversation is argued by the Petitioner to be in existence and Exhibit No. 3500-DA-5 is the only listed audio tape connected to witness David Alexander, the Court presumes that Exhibit No. 3500-DA-5 is the audio tape at issue in this § 2255 Motion.

677, and 726-729.[5] Counsel for all parties even engaged in a lengthy discussion about the evidentiary status of the tape recording and whether or not the jury should be told that the recording of Alexander's conversation was not in evidence. Trial Tr. at 2171-2177.[6] Therefore, based on the overwhelming evidence contradicting Petitioner's claim, it is clear that Counsel did not provide ineffective assistance of counsel on this issue.[7]

### III. Counsel's Interference with Petitioner's Right to Testify

Finally, Petitioner claims ineffective assistance of counsel resulting from Counsel's supposed interference with Petitioner's right to testify. It is true that the right to testify is well-grounded in the Fifth, Sixth and Fourteenth Amendments, Rock v. Arkansas, 483 U.S. 44, 51, 52 (1987), and cannot be waived by counsel, United States v. Ortiz, 82 F.3d 1066, 1070 (D.C. Cir. 1996). However, as other courts have noted, a "'barebones assertion' that his attorney told him not to testify in his own defense, even if that assertion is made under oath, has been held to be insufficient to justify a hearing or

---

[5] At one point, Koppelman asked Alexander, "When you spoke to the agents, the day you were arrested, did you tell them that when you went to – to Mr. Hammouda's building that you didn't know anything about a house? Didn't you tell them that?" Trial Tr. at 728.

[6] In his § 2255 Motion, Petitioner mischaracterizes the government's position in this exchange by asserting that the government denied that a tape even existed. Pet. § 2255 Mot. at 6. The trial transcript shows that this characterization is clearly in error. Contrary to what the Petitioner claims, see Reply to Gov. Mem. Law Opp'n § 2255 Mot. at 1, the prosecutor's comments on the record cannot be rationally construed as a denial that a tape exists. Rather, the exchange covered whether any evidence about the existence of the tapes had been adduced at trial.

[7] In Petitioner's § 2255 Motion, Petitioner also alleges that the tape recording also qualified as Brady impeachment material. Because it has been determined that the audio tape was in fact turned over to Counsel, this claim is meritless and will not be further explored.

8

P-049

other action on a petitioner's claim that his right to testify in his own defense was denied him." Scire v. United States, No. 96CV3446, 1997 WL 138991, * at 11 (E.D.N.Y. Mar. 24, 1997) (citing Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991)); see also Acevedo v. Demskie, 96 CV 3141, 1999 WL 325055, at *2 (E.D.N.Y. May 11, 1999).

In this claim, although Petitioner states that counsel wrongly interfered with his right to testify at trial, a closer examination of Petitioner's claim reveals that Petitioner is actually alleging that Counsel prevented Petitioner from testifying at a hearing that was conducted mid-trial – but out of the presence of the jury. The purpose of this hearing was to determine whether or not the government would be permitted to elicit testimony from David Alexander regarding a conversation Alexander had with Petitioner when, prior to testifying at trial, Alexander was inadvertently placed in a holding cell with Petitioner for approximately one hour.

Although Petitioner was invited to testify at the hearing, Counsel decided that allowing Petitioner to testify would compromise Petitioner's Sixth and Fifth Amendment rights. Trial Tr. at 465. Seeking to protect Petitioner's right to a fair trial, Counsel's decision cannot be deemed unreasonable. Furthermore, Counsel's decision cannot be found to have in any way prejudiced Petitioner. While it is true that, as a result of the hearing, this Court found that Petitioner had attempted to obstruct justice, Trial Tr. at 586, and this finding eventually resulted in a two-level upward adjustment at sentencing, still no prejudice resulted. First, after conducting the hearing, the Court ruled that the

9

government could not question Alexander about the apparent encounter with Petitioner in the holding cell. Trial Tr. at 465. Thus, even if Petitioner had testified at the hearing, the Court's ruling that kept evidence of the discussion in the holding cell out of the trial ensured Petitioner was not prejudiced by the supposed denial of his right to testify during the hearing.

More importantly, Petitioner was found guilty of both murder for hire and conspiracy to commit murder for hire. These convictions required that Petitioner be sentenced to a statutory minimum of life imprisonment, even without the enhancement for obstruction of justice under the sentencing guidelines. Therefore, even if Petitioner had testified at the hearing and had successfully convinced this Court that he had not attempted to obstruct justice, given the jury's verdict, he still would have received a life sentence. Having failed the two-prongs of the Strickland analysis, this claim of ineffective assistance of counsel is also denied.

### IV. Counsel's Failure to Raise Issues of Ineffectiveness on Appeal

Having found that Counsel did not provide ineffective assistance at trial, Counsel also did not provide ineffective assistance by failing to raise these unmeritorious claims on appeal.

### V. Certificate of Appealability

P-049

The only remaining issue is the question of whether to grant a certificate of appealability. For a certificate of appealability to issue, petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing "does not require a petitioner to demonstrate that he would prevail on the merits, but merely that 'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" Santana v. U.S., No. 04 CV 1111, 2005 WL 180932, at *7 (S.D.N.Y. Jan. 26, 2005) (quoting Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002)) (internal quotation marks and citation omitted). Petitioner has made no substantial showing of the denial of a constitutional right in this case.

## CONCLUSION

After reviewing the filings and the relevant portions of the record, which were entirely sufficient to dispose of this motion, the Court hereby DENIES both the motion and the issuance of a certificate of appealability. Morever, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is hereby DISMISSED with prejudice. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: April __, 2006
Brooklyn, New York

Senior U.S.D.J.

11